# Burke v. Commonwealth

(Decided Dec. 15, 1933.)

P. J. CLARKE for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

Monroe Coulter, John Murphy, K. Jones, and Will Burke were indicted in the Lincoln circuit court for the murder of Shade Wilder. It was charged in the indictment that Coulter, Murphy, Jones, and one Girtner, who was dead, had with malice aforethought shot and killed Wilder with a pistol, and that Burke was present, and feloniously and willfully, with malice aforethought, aided, abetted, and assisted them in so doing by drawing a pistol, a deadly weapon, and pointing it at and threatening other persons then present, to prevent them from protecting said Wilder and by making threats and urging and assisting by words and acts, Girtner, Coulter, Murphy, and Jones to kill and murder Wilder. Burke demurred to the indictment. The demurrer was overruled. The case came on for trial. The jury returned a verdict finding him guilty of manslaughter and fixing his punishment at six years in the penitentiary. He appeals.

The facts shown by the proof, are in brief these: On Monday, October 31, 1932, Shade Wilder, with his nephew Virgil Wilder, was on his way to Stanford, Ky.

They went by Shelby City, and near there they met Oscar Russell, Will Burke, and George R. Clarkson walking toward the Log Cabin Inn. Shade Wilder gave the three a ride. When they got to the inn, Shade Wilder and Oscar Russell went in the inn. Will Burke went home. Oscar Russell, after a little, came out of the inn and was kidding Virgil Wilder by pulling his hat down and playing with him. He took the ignition keys out of the car and put them in his pocket. After a few minutes, Will Burke came from home and called Russell, and the two with Clarkson walked away in the direction of Shelby City.

After Russell had left, Shade Wilder came out of the inn, found his keys were gone, and became angry. He borrowed a car and drove to Shelby City, as Russell had gone in that direction. He went on to Danville, and, not finding Russell anywhere, he went to the home of his brother George Wilder, and drove back to the Log Cabin Inn, after picking up his brothers Will and George Wilder. When they got to the inn, he and his brothers got out and went in and ordered a sandwich, and, while they were waiting for it, the car, containing Will Burke, Monroe Coulter, John Murphy, K. Jones, Oscar Russell, and Fred Girtner drove up to the inn. Some one told them that Shade Wilder was in the inn, and Girtner called for him to come out. Wilder came out and walked up to the car. When he saw Oscar Russell in the car, he began cursing him for stealing his keys, and, according to the proof for the common-wealth, had a pistol in his hands. Fred Girtner got out of the car on the other side and came around to where Wilder was standing with his pistol in his hand. Some words passed between them, and Wilder seized Girtner's pistol with his hand and held it up and they were in a struggle. Wilder's brothers, hearing the noise, came out of the inn, and were going up to their brother when Will Burke picked up a pistol on the seat of the car; jumped out and drew it on them, telling them to hold up their hands and stop or he would shoot them. They stopped. Girtner in the struggle managed to get his pistol away from Shade Wilder, and shot Wilder twice. Wilder then shot Girtner. Several shots were fired, but, when it was all over, Shade Wilder and Girtner were dead.

There was no proof that Will Burke fired any shots.

He testified that he did not draw a pistol on any one or threaten anybody. The fact is that the party in Girtner's car were all drinking. There was a half gallon of liquor left in the car in a gallon jug and a bottle which had been emptied of whisky. The proof was that there had never been any bad feeling between the parties before, and that Girtner called for Shade Wilder at the inn because he needed some money and wanted to borrow it from Wilder. There is no proof that Wilder was drinking, unless this may be inferred from his conduct, as shown by the proof.

It is insisted for the appellant: (1) The court erred in refusing to instruct the jury peremptorily to find the defendant not guilty; (2) the court erred in its instructions to the jury and in failing to instruct the jury on the law of the case; (3) the court erred in the admission of evidence and in allowing prejudicial questions to be asked, and in overruling a motion to discharge the jury; (4) the court erred in refusing defendant a new trial on the ground of prejudice of a juror.

█ The settled rule in this state is that if there is any evidence of probative value the question is for the jury. There was evidence here by more than one witness that Burke jumped out of the car with the pistol, drew it on Wilder's brothers, telling them to hold up their hands or he would shoot them, while Wilder was in a struggle with Girtner over his pistol. Although there was some conflict in the evidence, the questions of fact were clearly for the jury.

█ By instruction 2 the court in substance told the jury that, if the shooting of Shade Wilder was done in sudden heat and passion and without previous malice, and that Will Burke in sudden heat and passion and without malice had aided, abetted, and assisted therein, as shown by the proof, to find him guilty of voluntary manslaughter. Complaint is made of this instruction because the words "in sudden affray" were omitted. But the jury found the defendant guilty of voluntary manslaughter. He was clearly, therefore, not affected by the omission of these words, for, if inserted, they would only have been an additional reason for not finding him guilty of murder. In addition to this, the proof clearly showed that the whole thing occurred in sudden heat and passion, and the jury could not well have misunderstood

the instruction under the proof. Peace v. Com., 146 Ky. 754, 143 S. W. 399.

By the instruction on self-defense the court in substance told the jury that, if they believed from the evidence that any of the parties named in the indictment shot and killed Shade Wilder, and Burke believed, or had reasonable grounds to believe, that he or any of them was then and there in immediate danger of death or the infliction of some great bodily harm at the hands of Wilder, or any person present, acting with him, and it was necessary, or believed by the defendant in the exercise of reasonable judgment to be necessary, to so shoot and kill the deceased Wilder in order to avert that danger, real or to the defendant apparent, they ought to acquit the defendant upon the ground of self-defense or the defense of another and apparent necessity therefor.

Appellant complains of this instruction because there was no proof that he shot and killed Wilder. His offense, if any, rested in what he did in aiding and assisting Girtner. But, when the jury were told that he had a right to shoot Wilder on the facts stated in the instruction, they could not have failed to understand that the same facts would justify him in stopping Wilder's brothers from going up to him. The greater includes the less. In addition to this, the proof for the defendant wholly failed to justify him in what he did, or to show any reasonable grounds for his doing what the commonwealth proved he did do. His whole defense was that he did not do any of these things. The question really raised by the evidence was fairly submitted to the jury by the instructions as a whole, and no substantial right of the defendant was affected by the form of the instruction. If the instruction had been worded as now suggested by counsel, the result of the trial would have been precisely the same under the evidence, for the only question before the jury under the evidence was whether the defendant did the things charged in the indictment. The rule is well settled that a judgment of conviction may not be reversed for any error on the trial not affecting the substantial rights of the defendant.

■ When the defendant was on the stand as a witness, he was asked on cross-examination by the commonwealth attorney if on that morning and shortly be-

fore the homicide, as they came along, they had not taken Fred Benedict and another in the car, and Fred Girtner in his presence demanded money of them and told them they were going to kill them. The defendant objected to the question. The court overruled the objection on the ground that conduct just before the homicide was admissible to show the state of mind of the parties in the car. The defendant excepted and moved to discharge the jury, and this was overruled. The defendant, in answer to the questions, said that none of this happened. The question was proper, for the commonwealth case rested largely upon the idea that the parties in the car were drunk, and the Benedict transaction was so close to the homicide that it tended to show this.

In rebuttal the commonwealth introduced Benedict, and he was allowed to answer that the above did occur. But there was no objection or exception to this. It was simply a circumstance tending to show that the parties in the car were drinking, and this was a competent fact to be shown by the proof, for it tended to confirm the proof by the commonwealth as to the actions of the parties when they reached the inn. The evidence admitted was not incompetent, and there was therefore no substantial error here to the prejudice of appellant's rights.

When Oscar Russell was on the stand as a witness for the defendant, he was asked this question: ''Where were you boys first served with a warrant charging you as being present and aiders and abettors in killing Shade Wilder?'' The commonwealth objected to the question, and the objection was sustained. The defendant avowed that the witness would answer that no charge was placed against them until the Thursday following when they were brought into court on trial on misdemeanor charges. Counsel insists that the question should have been answered for the purpose of showing that the prosecution was brought about by the officers failing at the time to find the bullet hole in the car, together with the fact that they later found one. But the failure of the officers to get at the true facts and issue the warrants in the proper form, until the examining trial when the facts were brought out, threw no real light on the controversy. The proof as to the bullet hole in no way connected Burke with the trouble,

and it was admitted from the beginning that the shooting began with Girtner shooting Shade Wilder. Very clearly no substantial right of the defendant was denied here.

■ Sam Helms was a member of the jury, and one of the grounds for a new trial was that Helms was present at the examining trial where many facts were brought out which were not brought out on the trial of the case, and that he was not a competent juror. On the other hand, Sam Helms testified positively that he was not at the examining trial and knew nothing about it. His testimony was in some measure sustained by the testimony of the county judge and the county attorney, who knew him well, and testified that they had no recollection of seeing him there. On the other hand, the appellant introduced one witness who did not know Sam Helms before but was present at the examining trial, and on the hearing of the motion for a new trial in the circuit court testified that he saw Sam Helms at the examining trial. There was testimony by another witness that he thought he remmebered that Sam Helms was there. The circuit judge saw and heard the witnesses. The court does not disturb his findings on the fact, unless clearly against the evidence. That is not the case here. On the whole case the court finds no error in the record to the prejudice of the appellant's substantial rights.

Judgment affirmed.